AO 241
(Rev. 06/13)

Page 2

**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY**



| United States District Court | District: *United States District Court* |
|---|---|

Name (under which you were convicted): *Gilberto Fuentes Zaragoza*
*Pleasant Valley State Prison BC-7262*

Docket or Case No.: *17CF0067*

DEC 16 2021

CLERK US DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

By _____ C10

DEPUTY CLERK

Place of Confinement: *P.O. Box 8500*
*Facility A Building 3 Coalinga, CA 93210*

Prisoner No.:

Petitioner (include the name under which you were convicted)

v.

Respondent (authorized person having custody of petitioner)

*1:21CV01775 SKO(HC)*

The Attorney General of the State of:

**RECEIVED**

DEC 16 2021

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
DEPUTY CLERK

**PETITION**

1.  (a) Name and location of court that entered the judgment of conviction you are challenging: *SUPERIOR COURT OF THE STATE OF CALIFORNIA COUNTY OF ORANGE, CENTRAL JUSTICE CENTER DEPARTMENT C54. For petition under 28 U.S.C for writ of habeas Corpus by a person in state custody.*

(b) Criminal docket or case number (if you know): *17CF0067*

2.  (a) Date of the judgment of conviction (if you know): _____

(b) Date of sentencing: _____

3.  Length of sentence: *62 Years to life*

4.  In this case, were you convicted on more than one count or of more than one crime?  ☒ Yes  ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case: *DEFENDANT'S EXPOSURE*

| *Count* | *Charge* | |
|---|---|---|
| *1* | *PC 269 (a)(1)* | *15-life* |
| *2* | *PC 269 (a)(1)* | *15-life* |
| *3* | *PC 261 (a)(2) + PC 264 (c)(2)* | *7-9-11* |
| *4* | *PC 261 (a)(2) + PC 264 (c)(2)* | *7-9 11* |
| *5* | *PC 289 (a)(1)(c)* | *6-8-10 Total 62 Years to life* |

6.  (a) What was your plea? (Check one)

☐ (1) Not guilty     ☐ (3) Nolo contendere (no contest)

☐ (2) Guilty        ☐ (4) Insanity plea

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did

you plead guilty to and what did you plead not guilty to? *To be honest, I really know if*
*I did that above, and I am a defendant in the whithine cause*
*of action and I am a lay person untained in the law.*
*NOTE: I don't speak Inglish, and this petition was made by a per-*
*son who helped me to fill it up, at the best of his*
*ability.*

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury      ☐ Judge only

7.      Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☑ Yes      ☐ No

8.      Did you appeal from the judgment of conviction?

☑ Yes      ☐ No

9.      If you did appeal, answer the following:

(a) Name of court: *FROM THE SUPERIOR COURT OF CALIFORNIA COUNTY of ORANEE.*

(b) Docket or case number (if you know): _____

(c) Result: *Petition for review to exhaust state remedies. the judgment was affirmed*

(d) Date of result (if you know): *Electronical FILED on 7/15/2021 by Alex Reynoso.*

(e) Citation to the case (if you know): *S/N*

(f) Grounds raised: *THE INCLUDING EVIDENCE OF JANE CUTTING AND BUR-*
*NING HERSELF IN AN ATTEMPT TO COMMIT SUICIDE DEPRIVED APPELLANT*
*OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL.*
*THE APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGT TO THE EFFECTIVE*
*ASSISTANCE OF COUNSEL. For the reasons set forth above, review should*
*be granted or alternatively, the issues should be deemed exhaus-*
*ted for federal review Pursuant 28, U.S.C. § 2254*

(g) Did you seek further review by a higher state court?   ☑ Yes   ☐ No

If yes, answer the following:

(1) Name of court: *Court of Appeal Fourth District Division Three*

(2) Docket or case number (if you know): *N. 17CF0067*

(3) Result: *The petition for review to exhaust state remedies.*
*the itudgment was affirmed*

(4) Date of result (if you know): *Electronical FILED result on 7/15/2021*

AO 241
(Rev. 06/13)

Page 4

(5) Citation to the case (if you know): *S/N*

(6) Grounds raised: *APPELLANT'S PETITION FOR REVIEW TO EXHAUST STATE REMEDIES.*

(h) Did you file a petition for certiorari in the United States Supreme Court?   ☐ Yes   ☐ No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?   ☐ Yes   ☑ No

11. If your answer to Question 10 was "Yes," give the following information:

(a)   (1) Name of court: *S/N*

(2) Docket or case number (if you know): *S/N*

(3) Date of filing (if you know): *S/N*

(4) Nature of the proceeding: *S/N*

(5) Grounds raised: *S/N*

*S/N*

*S/N*

*S/N*

*S/N*

*S/N*

*S/N*

*S/N*

*S/N*

*S/N*

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☑ No

(7) Result: *S/N*

(8) Date of result (if you know): *S/N*

AO 241
(Rev. 06/13)

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: *IN THE SUPREME COURT OF THE STATE OF CALIFORNIA*

(2) Docket or case number (if you know): *SUPERIOR COURT NO. 17CF0067*

(3) Date of filing (if you know): *August 24, 2021*

(4) Nature of the proceeding: *(After an Unpublished Decision, Fourth Appellate, Division Tree)*

(5) Grounds raised: *APPELLANT'S PETITION FOR REVIEW TO EXHAUST STATE REMEDIES*

*The court hold that trial counsel forfeited the evidentiary error asserted in Argument, it is appellant's alternate position that his attorney provided constitutionally inadequate assistance of counsel in failing to make the necessary objections. "Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel.*

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☑ No

(7) Result: *Judgment was affirmed for Petition of review to exhaust state remedies.*

(8) Date of result (if you know): *August 24, 2021*

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: *(Court of Appeal, Fourth Appellate District, Division Tree)*

(2) Docket or case number (if you know): *Superior Court No.17CF0067*

(3) Date of filing (if you know): *August 24, 2021*

(4) Nature of the proceeding: *After an Unpublished Decision of the Court of Appeal.*

(5) Grounds raised: *1. EVIDENCE OF VICTIM CUTTING AND BURNING HERSELF IN AN ATTEMPT TO COMMIT SUICIDE DEPRIVED APPELLANT OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL.*

*2. THE APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.*

*3. THE PETITION TO EXHAUST HIS STATE REMEDIES FOLLOWING THE UNPUBLISHED DECISION OF THE COURT OF APPEAL, FOURTH APPELLATE DISTRICT, DIVISION THREE FILED ON JULY 15, 2021, AFFIRMING THE JUDGMENT MADE BY THE THRIAL COURT. PETITION FOR REHEARING WAS AVAILABLE BUT NOT SOUGHT.*

AO 241
(Rev. 06/13)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☑ No

(7) Result: *Judgment was affirmed for Petition of review to exhaust State remedies.*

(8) Date of result (if you know): *August 24, 2021.*

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:    ☑ Yes   ☐ No

(2) Second petition:   ☑ Yes   ☐ No

(3) Third petition:    ☑ Yes   ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

*S/N*

*S/N*

12.  For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:** *The Due Process Clause precludes the admission of evidence that is so unduly prejudicial that it render a trial fundamentally unfair.*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*THE COURT ABUSED ITS DISCRETION AND VIOLATED APPELLANT'S RIGHT TO DUE PROCESS AND A FAIR TRIAL WHEN THE COURT ADMITTED INFLAMMATORY FACTS THAT WERE UNNECESSARY TO PROVE APPELLANT MOLESTED.*

(b) If you did not exhaust your state remedies on Ground One, explain why: *Yes I exhaust my state remedies.*

AO 241
(Rev. 06/13)

(c)     **Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?          ☒ Yes     ☐ No

    (2) If you did not raise this issue in your direct appeal, explain why: _____ *S/N* _____

_____ *S/N* _____

_____ *S/N* _____

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

    ☒ Yes     ☐ No

    (2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: *By person during the process with my Attorney*

Name and location of the court where the motion or petition was filed: *County of Orange.*

Docket or case number (if you know): *No. 17 CF 0067*

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): *Pursuant to Rule of Court 4.424, the Court determines whether to impose either concurrent or consecutive sentences on all counts, or just one crime for separate acts.* *either them*

    (3) Did you receive a hearing on your motion or petition?          ☐ Yes     ☒ No

    (4) Did you appeal from the denial of your motion or petition?          ☒ Yes     ☐ No

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?          ☒ Yes     ☐ No

    (6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: *County of Orange*

Docket or case number (if you know): *No. 17 CF 0067*

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): *Not at all.*

    (7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

*Yes I do an appeal from the superior court of California County of orange to the court of Appeal -4th Dist Division 3 FILED.*

AO 241
(Rev. 06/13)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: *By a Motion to Appellant's petition for review to exhaust state remedies.*

**GROUND TWO:** *"Unnecessary admission of gruesome photographs can deprive a defendant of a fair trial and require reversal of a judgment.*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*Similarly, here as describe above, the introduction of the suicide and self-harm evidence rendered the trial unfair. Reversal is therefore required unless the prosecution can prove the error is harmless beyond a reasonable doubt. To the extent the error is viewed solely as one of state law, reversal is still required if there is a reasonable chance a result more favorable to appellant would have been reached in the absence of the error.*

(b) If you did not exhaust your state remedies on Ground Two, explain why: *Yes I do.*

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ☑ Yes   ☐ No

(2) If you did not raise this issue in your direct appeal, explain why: *S/N*

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: *By a Motion to Appellant's petition for review.*

Name and location of the court where the motion or petition was filed: *IN THE SUPREME COURT OF THE STATE OF CALIFORNIA*

Docket or case number (if you know): *SUPERIOR COURT NO. 17CF0067*

Date of the court's decision: *August 24, 2021.*

AO 241
(Rev. 06/13)                                                                                                          Page 9

Result (attach a copy of the court's opinion or order, if available): *The prosecutor mentioned the issue twice during her closing argument. The first time, she simply pointed out that Laura's suicidal thoughts and psychological pain. The judgment is affirmed*

(3) Did you receive a hearing on your motion or petition?                    ☐ Yes    ☑ No

(4) Did you appeal from the denial of your motion or petition?              ☑ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☑ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: *IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA FOURTH APPELLATE DISTRICT DIVISION THREE.*

Docket or case number (if you know): *(Super. Ct. No. 17CF0067)*

Date of the court's decision: *Electronically FILED on 7/15/2021*

Result (attach a copy of the court's opinion or order, if available): *The defendant alleging ineffective assistance of counsel he suffered prejudice to a reasonable probability in the outcome of the case. The judgment was affirmed.*

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____ *S/N* _____

_____ *S/N* _____

_____ *S/N* _____

_____ *S/N* _____

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Two : *AN APPELLANT'S PETITION FOR REVIEW TO EXHAUST STATE REMEDIES.*

_____

**GROUND THREE:** *Claims of evidentiary error are reviewed under an abuse of discretion standard.*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*"Prejudice" in the context of Evidence refers to the possibility of misuse of the evidence the use of the evidence by the trier of fact for a purpose for which the evidence is not properly admissible. A person may not be deprived "of life, liberty, or property without due process of law in which his substantial rights are respected.*

AO 241                                                                    Page 10
(Rev. 06/13)

(b) If you did not exhaust your state remedies on Ground Three, explain why: *Yes I exhaust my state*
*remedies.*

(c) . **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue? ☑ Yes  ☐ No

(2) If you did not raise this issue in your direct appeal, explain why: *S/N*
*S/N*
*S/N*

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court? ☑ Yes  ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: *HABEAS CORPUS Court of Appeal-Fourth District Division tree State of California.*

Name and location of the court where the motion or petition was filed: *Court of Appeal-fourth District Division tree of California.*

Docket or case number (if you know): *SUPERIOR COURT NO. 17CF0067*

Date of the court's decision: *August 24, 2021.*

Result (attach a copy of the court's opinion or order, if available): *the defendant alleging ineffective assistance of counsel he suffered Preiudice to a reasonable pro-bability in the outcome of the case. The judgment was affirmed.*

(3) Did you receive a hearing on your motion or petition? ☐ Yes  ☑ No

(4) Did you appeal from the denial of your motion or petition? ☑ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☑ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: *Court of Appeal- Fourth District Division tree state of California.*

Docket or case number (if you know): *SUPERIOR COURT NO. 17CF0067*

Date of the court's decision: *August 24, 2021*

Result (attach a copy of the court's opinion or order, if available): *The defendat alleging ine-ffective assistance of counsel he suffered Preiudice to reaso-nable probability in the outcome of the case. The judgment was affirmed.*

AO 241
(Rev. 06/13)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

*My answer was yes*                    *S/N*

                    *S/N*

                    *S/N*

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three: *Yes I used the state*

*habeas Corpus.*

**GROUND FOUR:** *Prejudice within the meaning of Evidence which*
*would cause the jury to convict an innocent man for an improper reason.*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*The United States Supreme Court has described the right*
*of the defendant in a criminal trial to due process as*
*"the right to a fair opportunity to defend against the*
*State's accusations." Due process of law requires that*
*a person accused of a crime is entitled to an orderly*
*legal procedure in which his substantial rights are respected.*
*When an accused is treated unfairly, the whole system of Justice suffers.*

(b) If you did not exhaust your state remedies on Ground Four, explain why: *Yes I exhaust my*
*state remedies.*

(c)     **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☑ Yes      ☐ No

(2) If you did not raise this issue in your direct appeal, explain why: *S/N*

*S/N*

*S/N*

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes      ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: *By State of habeas corpus.*

AO 241
(Rev. 06/13)

Page 12

Name and location of the court where the motion or petition was filed: (Court of Appeal, fourth Appellate District, Division Three)

Docket or case number (if you know): Superior Court No. 17CF0067

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): The defendant alleging ineffective assistance of counsel he suffered Prejudice to a reasonable probability in the outcome of the case. The Judgment was affirmed.

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☑ No

(4) Did you appeal from the denial of your motion or petition? ☑ Yes ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☑ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: In the supreme court of the state of California

Docket or case number (if you know): 17CF0067

Date of the court's decision: August 24, 2001

Result (attach a copy of the court's opinion or order, if available): The defendant alleging ineffective assistance of counsel. The Judgment was affirmed

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

S/N
S/N
S/N
S/N
S/N
S/N

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: In the supreme court of the state of California Appellant's petition for review to exhaust state remedies.

13.   Please answer these additional questions about the petition you are filing:

   (a)   Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?   ☑ Yes   ☐ No

   If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:   _____ S/N _____

   _____ S/N _____

   _____ S/N _____

   _____ S/N _____

   (b)   Is there any ground in this petition that has not been presented in some state or federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

   _____ S/N _____

   _____ S/N _____

   _____ S/N _____

14.   Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?   ☐ Yes   ☑ No

   If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy of any court opinion or order, if available.   _____ S/N _____

   _____ S/N _____

   _____ S/N _____

   _____ S/N _____

   _____ S/N _____

   _____ S/N _____

   _____ S/N _____

   _____ S/N _____

15.   Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?   ☐ Yes   ☑ No

   If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.   _____ S/N _____

   _____ S/N _____

   _____ S/N _____

   _____ S/N _____

   _____ S/N _____

   _____ S/N _____

AO 241
(Rev. 06/13)

Page 14

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: _PATRICIA   BRADWELL   PUBLIC DEFENDER_

(b) At arraignment and plea: _PATRICIA   BRADWELL   PUBLIC DEFENDER_

(c) At trial: _LARISA   DINSMOOR   PUBLIC DEFENDER_

(d) At sentencing: _LARISA   DINSMOOR   PUBLIC DEFENDER_

(e) On appeal: _KRISTEN OWN Attorney at law._

(f) In any post-conviction proceeding: _S/N_   _S/N_

(g) On appeal from any ruling against you in a post-conviction proceeding: _S/N_   _S/N_   _S/N_

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?   ☐ Yes   ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: _S/N_   _S/N_

(b) Give the date the other sentence was imposed: _S/N_

(c) Give the length of the other sentence: _S/N_

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?   ☐ Yes   ☑ No

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

_None_
_None_
_None_
_None_
_None_
_None_

AO 241
(Rev. 06/13)

NONE    NONE

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)      A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

(A)      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C)      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241
(Rev. 06/13)

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: *For the reasons set forth above, review should be granted by this court, or alternatively, the issues should be deemed exhausted for federal pursuant 28 U.S.C. § 2254.*

or any other relief to which petitioner may be entitled.

X _____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on *December* (month, date, year).

Executed (signed) on *12-8-2021* (date).

_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

_____ S/N _____

_____ S/N _____

_____ S/N _____

_____ S/N _____

Supreme Court No._____

## IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | ) ) ) | APPELLATE COURT NO. G058966 |
| Plaintiff and Respondent, | ) ) ) | SUPERIOR COURT NO. 17CF0067 |
| v. | ) ) | |
| GILBERTO FUENTES ZARAGOZA, | ) ) ) | |
| Defendant and Appellant. | ) | |

_____

## APPELLANT'S PETITION FOR REVIEW TO EXHAUST STATE REMEDIES

(After an Unpublished Decision of the Court of Appeal, Fourth Appellate District, Division Three)

KRISTEN OWEN
Attorney at Law
State Bar No. 228029
P.O. Box 1608
Burlingame, California 94011
(619) 972-1739

Attorney for Appellant

# TABLE OF CONTENTS

**Page**

STATEMENT UNDER RULE 8.508                         6

PROCEDURAL AND FACTUAL BACKGROUND                  6

ARGUMENTS

    I. INCLUDING EVIDENCE OF JANE CUTTING            7
    AND BURNING HERSELF IN AN ATTEMPT TO
    COMMIT SUICIDE DEPRIVED APPELLANT OF
    HIS    CONSTITUTIONAL    RIGHTS    TO    DUE
    PROCESS AND A FAIR TRIAL, AND THE ERROR
    WAS NOT HARMLESS BEYOND A REASONABLE
    DOUBT.

    II. IF THIS COURT FINDS FORFEITURE ON THE       20
    EVIDENTIARY ERROR, THEN APPELLANT WAS
    DENIED HIS CONSTITUTIONAL RIGHT TO THE
    EFFECTIVE ASSISTANCE OF COUNSEL.

CONCLUSION                                         22

# TABLE OF AUTHORITIES

## Cases

*Brady v. Maryland* (1963) 373 U.S. 83
  [83 S.Ct. 1194, 10 L.Ed.2d 215] ................................................. 8
*Bryson v. State of Alabama* (5th Cir. 1981) 634 F.2d 862 .... 10, 16
*Chambers v. Mississippi* (1973) 410 U.S. 284
  [93 S.Ct. 1038, 35 L.Ed.2d 297] ................................................. 8
*Chapman v. California* (1967) 386 U.S. 18
  [87 S.Ct. 824, 17 L.Ed.2d 705] ...................................... 10, 11, 16
*College Hospital v. Superior Court* (1994) 8 Cal.4th 704 ...... 11, 19
*Estelle v. McGuire* (1991) 502 U.S. 62
  [112 S.Ct. 475, 116 L.Ed.2d 385] ....................................... 10, 16
*In re Charles T.* (2002) 102 Cal.App.4th 869 .............................. 12
*In re Cordero* (1988) 46 Cal.3d 161 ............................................ 20
*In re Sheena K.* (2007) 40 Cal.4th 875 ....................................... 12
*In re Wilford J.* (2004) 131 Cal.App.4th 742 .............................. 12
*McKinney v. Rees* (9th Cir. 1993) 993 F.2d 1378 .................... 9, 16
*Payne v. Tennessee* (1991) 501 U.S. 808
  [111 S.Ct. 2597, 115 L.Ed.2d 720] ............................................ 10
*People v. Abbaszadeh* (2003) 106 Cal.App.4th 642 ..................... 12
*People v. Allen Waldo Hoze* (1987) 195 Cal.App.3d 949 ............... 9
*People v. Cooper* (1991) 53 Cal.3d 771 ....................................... 21
*People v. Cooper* (2007) 148 Cal.App.4th 731 ............................... 8
*People v. Dixon* (2007) 153 Cal.App.4th 985 ................................. 7
*People v. Ledesma* (1987) 43 Cal.3d 171 ..................................... 20
*People v. Malone* (1988) 47 Cal.3d 1 .......................................... 21
*People v. Marks* (2003) 31 Cal.4th 197 ....................................... 11
*People v. Marsh* (1985) 175 Cal.App.3d 987 .................... 17, 18, 19
*People v. Ramos* (1982) 30 Cal.3d 553 ....................................... 18
*People v. Ramos* (1984) 37 Cal.3d 136 ......................................... 9
*People v. Reeder* (1978) 82 Cal.App.3d 543 .................................. 8
*People v. Sarazzawski* (1945) 27 Cal.2d 7 .................................... 8
*People v. Scott* (1994) 9 Cal.4th 331 .......................................... 21
*People v. Spencer* (1967) 66 Cal.2d 158 ...................................... 10
*People v. Stritzinger* (1983) 34 Cal.3d 505 ................................. 10
*People v. Watson* (1956) 46 Cal.2d 818 ................................. 11, 19
*People v. Williams* (1998) 17 Cal.4th 148 ................................... 12
*Spencer v. Texas* (1967) 385 U.S. 554
  [87 S.Ct. 648, 17 L.Ed.2d 606] ............................................. 9, 10

*Strickland v. Washington* (1984) 466 U.S. 668
    [80 L.Ed.2d 674, 697-700; 104 S.Ct. 2052]............ 11, 20, 21, 22
*Terrovona v. Kincheloe* (9th Cir. 1988) 852 F.2d 424............ 10, 16
*United States v. Valenzuela-Bernal* (1982) 458 U.S. 858
    [102 S.Ct. 3440, 73 L.Ed.2d 1193] ............................................. 9
*Washington v. Texas* (1967) 388 U.S. 14
    [87 S.Ct. 1920, 18 L.Ed.2d 1019] ............................................. 8

**Statutes**
28 U.S.C. § 2254 ........................................................................... 22
Evidence Code section 352 .................................................. passim

**Rules**
Cal. Rules of Court, rule 8.508, subd. (b) ...................................... 6

**Treatises**
6 Witkin & Epstein, Cal. Criminal Law, § 36, p. 497 ................. 12

**Constitutional Provisions**
Cal. Const., art. I, section 7 ......................................................... 8
Cal. Const., art. I, section 15 .................................................. 8, 20
U.S. Const., Fourteenth Amend. .................................................. 8
U.S. Const., Sixth Amend. ......................................................... 20

Supreme Court No._____

# IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | ) ) ) ) | APPELLATE COURT NO. G058966 |
| Plaintiff and Respondent, | ) ) ) | SUPERIOR COURT NO. 17CF0067 |
| v. | ) ) | |
| GILBERTO FUENTES ZARAGOZA, | ) ) ) ) | |
| Defendant and Appellant. | ) | |

---

## PETITION FOR REVIEW TO EXHAUST STATE REMEDIES

---

TO THE HONORABLE CHIEF JUSTICE AND ASSOCIATE JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA:

Appellant Gilberto Fuentes Zaragoza files this petition to exhaust his state remedies following the unpublished decision of the Court of Appeal, Fourth Appellate District, Division Three filed on July 15, 2021, affirming the judgment made by the trial court. Petition for rehearing was available but not sought. The opinion is attached hereto as Appendix "A."

## STATEMENT UNDER RULE 8.508

This petition presents no grounds for review under rule 8.508, subdivision (b) of the California Rules of Court and is being filed for federal habeas corpus exhaustion.

## PROCEDURAL AND FACTUAL BACKGROUND

For this petition only, appellant adopts the procedural and factual history set forth in the opinion of the Court of Appeal. (Appendix "A" at pp. 2-4.)

## ARGUMENTS

### I.

**INCLUDING EVIDENCE OF JANE CUTTING AND BURNING HERSELF IN AN ATTEMPT TO COMMIT SUICIDE DEPRIVED APPELLANT OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL, AND THE ERROR WAS NOT HARMLESS BEYOND A REASONABLE DOUBT.**

A.  INTRODUCTION.

Prior to trial, appellant moved to exclude evidence of the victim, Jane Doe, cutting and burning herself in an attempt to commit suicide:

> I think Jane Doe can talk about seeing a therapist.  There's no problems with that.  It's that added degree of cutting herself, and trying to commit suicide that I think will just prevent my client from having a fair trial under state and constitutional rights.

(1RT 38.)[1]

The trial court ruled the evidence was admissible because it was relevant as a symptom of sexual abuse. The court's ruling violated the rules of evidence and appellant's constitutional rights because allowing in this highly inflammatory evidence tipped the balance with respect to the weakest of the counts charged.  The jury was inclined to convict and punish appellant not only as a molester, but also a person who wrecked the life of Jane well-beyond the incidents of sexual abuse.

---

[1] The reporter's transcript is cited herein as "RT."

## B.   STATEMENT OF LAW.

Claims of evidentiary error are reviewed under an abuse of discretion standard. (*People v. Dixon* (2007) 153 Cal.App.4th 985, 997, citing *People v. Cooper* (2007) 148 Cal.App.4th 731, 740.) The California Evidence Code renders issues of admissibility of evidence discretionary, but the scope of that discretion is circumscribed by a defendant's due process rights and his right to a fair trial. (*Chambers v. Mississippi* (1973) 410 U.S. 284, 302 [93 S.Ct. 1038, 35 L.Ed.2d 297]; *People v. Reeder* (1978) 82 Cal.App.3d 543, 553.)   The trial court's authority under Evidence Code section 352 must yield to a defendant's constitutional right to present a defense. (*Washington v. Texas* (1967) 388 U.S. 14, 23 [87 S.Ct. 1920, 18 L.Ed.2d 1019]; *Chambers v. Mississippi, supra,* 410 U.S. at p. 302; *People v. Reeder, supra,* 82 Cal.App.3d at p. 553.)

The United States Supreme Court has described the right of the defendant in a criminal trial to due process as "the right to a fair opportunity to defend against the State's accusations." (*Chambers v. Mississippi, supra,* 410 U.S. at p. 294.) The due process clauses of the Fourteenth Amendment to the United States Constitution and of Article I, sections 7 and 15 of the California Constitution provide that a person may not be deprived "of life, liberty, or property without due process of law." Due process of law requires that a person accused of a crime is entitled to an orderly legal procedure in which his substantial rights are respected. (*People v. Sarazzawski* (1945) 27 Cal.2d 7, 11.) When an accused is treated unfairly, the whole

8

system of justice suffers.  (*Brady v. Maryland* (1963) 373 U.S. 83, 87 [83 S.Ct. 1194, 10 L.Ed.2d 215].)

"Fundamental fairness" is the essence of the due process protection provided by our Constitution.  (See *People v. Ramos* (1984) 37 Cal.3d 136, 153; *United States v. Valenzuela-Bernal* (1982) 458 U.S. 858, 872 [102 S.Ct. 3440, 73 L.Ed.2d 1193] ["Due process guarantees that a criminal defendant will be treated with 'that fundamental fairness essential to the very concept of justice.'"]; *Spencer v. Texas* (1967) 385 U.S. 554, 563-564 [87 S.Ct. 648, 17 L.Ed.2d 606] ["the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial"].)

California Evidence Code section 352 states: "The Court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  "Prejudice" in the context of Evidence Code section 352 refers to the possibility of misuse of the evidence – the use of the evidence by the trier of fact for a purpose for which the evidence is not properly admissible.  (*People v. Allen Waldo Hoze* (1987) 195 Cal.App.3d 949, 954.)

An evidentiary error may deny a defendant his constitutional right to a fair trial if the evidentiary error so infuses the trial with unfairness as to deny due process of law.  (See *McKinney v. Rees* (9th Cir. 1993) 993 F.2d 1378, holding that character evidence of propensity – defendant's possession of and fascination with knives – did not support any

permissible inference relevant to defendant's prosecution for the stabbing-murder of his mother, and violated due process; see also, *Estelle v. McGuire* (1991) 502 U.S. 62, 75 [112 S.Ct. 475, 116 L.Ed.2d 385], *Terrovona v. Kincheloe* (9th Cir. 1988) 852 F.2d 424, 428-429, and *Bryson v. State of Alabama* (5th Cir. 1981) 634 F.2d 862.)

The Due Process Clause precludes the admission of evidence that is so unduly prejudicial that it renders a trial fundamentally unfair. (*Payne v. Tennessee* (1991) 501 U.S. 808, 825 [111 S.Ct. 2597, 115 L.Ed.2d 720].) "[O]ur decisions exercising supervisory power over criminal trials . . . suggest that evidence of prior crimes, introduced for no purpose other than to show criminal disposition, would violate the Due Process Clause." (*Spencer v. Texas* (1967) 385 U.S. 554, 574-575 [87 S.Ct. 648, 17 L.Ed.2d 606], conc. and dis. opn. of Warren, C.J.)

If an evidentiary error is of federal as well as state constitutional dimension, the court applies the reversible error test set out in *Chapman v. California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705]. This test provides that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (*Chapman v. California, supra*, 386 U.S. at p. 24.) The burden is on the beneficiary of the error "either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment." (*People v. Stritzinger* (1983) 34 Cal.3d 505, 520; and see *People v. Spencer* (1967) 66 Cal.2d 158, 168.) In other words, under *Chapman*, the burden is on the respondent to

demonstrate that the error was harmless beyond a reasonable doubt. (*People v. Stritzinger, supra,* 34 Cal.3d at p. 520.) Where a fundamental constitutional right is at issue, erroneous evidentiary rulings are seldom harmless under this standard: "An error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot . . . be conceived of as harmless." (*Chapman v. California, supra,* 386 U.S. at pp. 23-24.)

If an evidentiary error does not implicate the federal Constitution, then the court applies "reasonable probability" standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Marks* (2003) 31 Cal.4th 197, 226-227.) Under the *Watson* standard, the judgment should be reversed if the appellate court finds it reasonably probable that a result more favorable to the appellant would have been reached in the absence of the error. (*People v. Watson, supra,* 46 Cal.2d. at p. 837.) "Probability" in this context does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility. (*College Hospital v. Superior Court* (1994) 8 Cal.4th 704, 715, citing *People v. Watson, supra,* 46 Cal.2d at p. 837 and *Strickland v. Washington* (1984) 466 U.S. 668, 693-694, 697, 698 [80 L.Ed.2d 674, 697-700; 104 S.Ct. 2052].)

C.     THE CLAIM IS PRESERVED FOR APPEAL.

As described more fully below, in a motion prior to the start of trial, defense counsel objected to the evidence of Jane Doe cutting and burning herself in suicide attempts. (RT 37-39.) The

court ruled it was inclined to allow the evidence because it was relevant as a symptom of sexual abuse.  (RT 37-39.)

During the testimony of Jane, defense counsel did not object again.  However, this failure to object again did not amount to waiver.  There was no indication that another objection from defense counsel would change the court's previous ruling, and there is a general exception to the waiver rule where an objection would have been futile, as was the case here.  (*People v. Abbaszadeh* (2003) 106 Cal.App.4th 642, 648, and authority discussed therein.)

If this court disagrees, this court still has discretion to consider issues that have not been formally preserved for review.  "In general, forfeiture of a claim not raised in the trial court by a party has not precluded review of the claim by an appellate court in the exercise of that court's discretion."  (*In re Sheena K.* (2007) 40 Cal.4th 875, 879, fn. 7, citing *People v. Williams* (1998) 17 Cal.4th 148, 161-162, fn. 6; *In re Wilford J.* (2004) 131 Cal.App.4th 742, 754; *In re Charles T.* (2002) 102 Cal.App.4th 869, 873; 6 Witkin & Epstein, Cal. Criminal Law, § 36, p. 497.)]  If this court disagrees, then it may nonetheless consider the issue based on ineffective assistance of counsel, as described in Argument II below.

## D.   PERTINENT FACTS.

Prior to trial, appellant moved to be able to exclude evidence of Jane Doe cutting herself in an attempt to commit suicide:

> I think Jane Doe can talk about seeing a
> therapist.  There's no problems with that.  It's that

> added degree of cutting herself, and trying to commit
> suicide that I think will just prevent my client from
> having a fair trial under state and constitutional
> rights.

(1RT 38.)

The court found that the evidence under Evidence Code section 352 was relevant to the doctor's testimony of suicide being a symptom of sexual abuse. (1RT 38.) The court stated it was inclined to let in the evidence, but offered to allow defense counsel to object at sidebar at trial. (1RT 39.)

At trial, Jane testified that appellant's abuse of her caused her to inflict self-harm. She would cut and burn herself on her wrists and thighs. She did not want to feel the pain that appellant caused her. (1RT 116.) She started this self-abuse in seventh grade. (1RT 116-117.) By the 10th grade, she was having suicidal thoughts. (1RT 118.)

Doctor Ward testified as an expert on Child Sexual Abuse Accommodation Syndrome. (2RT 221-242.) She described children and adolescents committing self-harm:

> Self-harm is best thought of as a person's way to deal
> with psychological pain. And what happens is the
> person will harm themselves physically by cutting or
> burning or doing other things to themselves,
> essentially to distract themselves from the
> psychological pain by inflicting pain on
> themselves. It's a way to distract themselves from
> emotional or psychological pain.

(2RT 241.)

The People emphasized the suicidal thoughts and Jane's courage in the face of them during closing argument:

> And she harbored the secret he told her to keep for years.  She started to harm herself physically, and we'll talk about that.  And it wasn't until the moment where she was having suicidal thoughts, saying, "I cannot handle the psychological pain anymore, I'm going to end my life over this," it wasn't until then that she thought to herself I don't want to end my life.  I need to do something about this.  And that was the sole reason she reported what he had done to her.

(2RT 330-331.)

The People then returned to the same subject to close its argument:

> [Jane] told us about self-harming, that in seventh grade, to put up with the emotional and psychological pain her uncle caused her, she started physically harming herself.
>
> And I asked her, "Well, why would you do that?"
>
> And she said, "Well, I started cutting my wrists and burning my wrists, cutting my thighs and burning my thighs to inflict physical pain to distract me from what he did to me."
>
> And Dr. Ward explained this for us.... adolescents deal with psychological trauma, turmoil, by sometimes inflicting physical pain to distract themselves from all the trauma, the emotional trauma that someone has caused them.
>
> And this is important to remember not only why she eventually reported, because she did not want to end her life, but it's also important to remember that the degree of physical harm that she's causing herself is a direct result from the degree of harm that the defendant caused her.

14

> This is what she was forced to do to keep her life
> intact.  This is how she was putting up with all of the
> hurt and all of the pain that he caused her, not only
> having to live with the memories of being raped
> repeatedly from the age of 10 to the age of 14, but
> now inflicting physical -- by cutting yourself and
> burning yourself to cope.
>
> Luckily, [Jane] did what she could so she didn't have
> to end her life.  And she was here in court today to
> testify and tell you her story.  And that's what this
> case is about.  This case is about [Jane], what the
> defendant did to her, what he stole from her.  And
> now it's time for you to hold him accountable and to
> bring [Jane] justice.

(2RT 342-343.)

**E.   THE COURT ABUSED ITS DISCRETION AND VIOLATED APPELLANT'S RIGHT TO DUE PROCESS AND A FAIR TRIAL WHEN THE COURT ADMITTED INFLAMMATORY FACTS THAT WERE UNNECESSARY TO PROVE APPELLANT MOLESTED.**

The trial court should have excluded evidence that Jane burned and cut herself in attempts at self-punishment and suicide as responses to the sexual abuse.  The trial court erroneously ruled the evidence admissible because it was a symptom of sexual abuse.  However, this ruling was nonsensical.  Appellant conceded he had sexually abused Jane as alleged in counts four and five.  Thus, demonstrating symptoms of sexual abuse was unnecessary; sexual abuse had obviously occurred.  Appellant only disputed counts one through three.

Therefore, all of the evidence of burning, cutting and suicide only served to inflame the passions of the jury to convict

and punish appellant for the weaker counts.  It was for this specific reason that the People ended argument with the description of burning, cutting and suicide, and included statements like, "... remember that the degree of physical harm that she's causing herself is a direct result from the degree of harm that the defendant caused her" and "... now it's time for you to hold him accountable and to bring [Jane] justice."  (2RT 342-343.)

This court should find the error infused the trial with unfairness and denied appellant due process of law, apply the prejudice standard set forth in *Chapman v. California, supra,* 386 U.S. at pp. 23-24, and reverse.  (*McKinney v. Rees, supra,* 993 F.2d 1378, *Estelle v. McGuire, supra,* 502 U.S. at p. 75, *Terrovona v. Kincheloe, supra,* 852 F.2d at pp. 428-429, and *Bryson v. State of Alabama, supra,* 634 F.2d 862.)]

Prejudice here is particularly clear in light of the weakness of the prosecution's case on counts one through three.  Appellant admitted to counts four and five.  On the initial pretense call, appellant admitted to sexually abusing Jane.  In his initial interview with police, appellant admitted to this sexual abuse.  It would be highly unusual for a person to confess to sexual abuse of a girl in general, admit to multiple instances of it in particular, but to deny just a few instances.

Thus, here the People faced a situation where there was much greater doubt on counts one through three, to which appellant did not admit and there was no pretense call that related.  To overcome this hurdle, the People wanted the jury to

feel sadness for Jane Doe and anger at appellant.  The People sought to inflame these passions with the additional evidence of subsequent traumas, self-harm, burning, cutting and suicide.  The People's closing argument, quoted at length above, makes this point clear and explicit.  The highly inflammatory evidence effectively moved appellant from a molester into the man who likely permanently ruined Jane's life, causing her as a child to inflict burns and cuts on her body and contemplate suicide.  While this evidence had no probative value as to what the jury had to decide, it implied appellant was a life wrecker who deserved to be severely punished.

The court's error in admitting the evidence can be seen by analogizing to cases where prosecutors use grisly photos of limited or no probative value to inflame the jury to punish the defendant.  For example, in *People v. Marsh* (1985) 175 Cal.App.3d 987, the defense objected on Evidence Code section 352 grounds to the introduction of seven slides of autopsy photographs, which graphically depicted the injuries of the murder victims.  The prosecutor argued the slides were relevant to show the amount of force used to inflict the fatal blows.  The slides were admitted, and the defendant was convicted.  (*People v. Marsh, supra*, 175 Cal.App.3d at p. 997.)

On appeal, the court held that although cause of death was the central issue in the case, the autopsy surgeon's testimony was adequate to make the prosecution's point.  Thus, the slides in question were far more prejudicial than probative and their introduction into evidence was error:

> The primary cause of death, i.e., intercranial brain swelling, was never disputed.  There was no expert medical testimony contradicting the autopsy surgeon's conclusions and various other medical witnesses testified to the cause of death without referring to the autopsy photographs. . . . Here, where the uncontradicted medical testimony identified the precise location and nature of the injuries the autopsy photographs have little, if any, additional probative value.

(*People v. Marsh, supra,* 175 Cal.App.3d at p. 997.)

Similarly, in the present case, the reason for introducing the evidence -- because self-harm is a symptom of sexual abuse -- was an invalid reason, as the occurrence of sexual abuse was not in dispute.  Clearly appellant had sexually abused Jane.  The evidence of suicide and self-harm could thus have only been relevant if there was some testimony that where there are three or more occurrences of sexual abuse suicide and self-harm is more likely to occur.  However, there was no medical expert giving such an opinion.  Therefore, the evidence had no probative value.

The evidence, however, was not introduced because of probative value.  Rather, as in *Marsh,* the real reason for the introduction of the evidence was the unstated reason -- to inflame the jury.  In *Marsh,* the prosecutor used the grisly photos to make the jury want to punish the defendant.  Likewise, here the prosecutor used the fact of Jane's self-mutilation and suicide attempts to make the jury punish appellant.  Closing argument made this point explicit.

In a case similar to *Marsh, People v. Ramos* (1982) 30
Cal.3d 553 the objected-to photos showing the decedent's body
bore on no contested issue and the prosecutor's only purpose in
seeking their admission was "to humanize [the victim] and make
the jury feel sorry for him." (*People v. Ramos, supra*, 30 Cal.3d
553, 577.)  Likewise, here the admission of Jane's self-mutilation
and suicide served only to induce strong jury reactions.  Thus,
this Court should find that, contrary to the trial court's ruling,
that the prejudicial effect of the suicide and self-harm evidence
outweighed any probative value.  (Evid. Code, § 352.)

   "Unnecessary admission of gruesome photographs can
deprive a defendant of a fair trial and require reversal of a
judgment." (*People v. Marsh, supra*, 175 Cal.App.3d, at p.
997.)  Similarly, here as described above, the introduction of the
suicide and self-harm evidence rendered the trial unfair.  Reversal
is therefore required unless the prosecution can prove the error is
harmless beyond a reasonable doubt.  To the extent the error is
viewed solely as one of state law, reversal is still required if there
is a reasonable chance a result more favorable to appellant would
have been reached in the absence of the error.  (*People v.
Watson, supra*, 46 Cal.2d 818, 836; *College Hospital v. Superior
Court, supra*, 8 Cal.4th 704, 715.)  In appellant's case, there is
such a reasonable probability the inclusion of the objected-to
evidence of appellant wrecking Jane's life and causing her to
commit suicide and self-mutilate improperly swayed the jury to
find appellant guilty of the weaker charges.  Appellant

respectfully requests his conviction as to counts one through three be reversed.

## II.

### IF THIS COURT FINDS FORFEITURE ON THE EVIDENTIARY ERROR, THEN APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

Should this court hold that trial counsel forfeited the evidentiary error asserted in Argument I above, it is appellant's alternate position that his attorney provided constitutionally inadequate assistance of counsel in failing to make the necessary objections. "Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel. The ultimate purpose of this right is to protect the defendant's fundamental right to a trial that is both fair in its conduct and reliable in its result.  Construed in light of its purpose, the right entitles the defendant not to some bare assistance but rather to effective assistance. [citations omitted]." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215; accord, *In re Cordero* (1988) 46 Cal.3d 161, 179-180.)

In *Strickland v. Washington, supra,* 466 U.S. 668 , the United States Supreme Court directed appellate courts considering ineffective assistance of counsel claims to undertake a two part analysis. First, the court must determine whether "counsel's representation fell below an objective standard of

reasonableness . . . considering all the circumstances . . . under prevailing professional norms." (*Id.* at p. 688.) Second, the court must determine whether "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (*Strickland v. Washington, supra,* 66 U.S. at p. 695.)

Here, should counsel's failure to object during testimony to Jane describing burning herself, cutting herself and suicidal thoughts be deemed to have resulted in forfeiture, counsel was deficient in not preserving those issues for appeal. The failure to object to errors that result in a waiver of review may constitute ineffective assistance of counsel. (*People v. Scott* (1994) 9 Cal.4th 331, 356, fn. 18; *People v. Cooper* (1991) 53 Cal.3d 771, 831; *People v. Malone* (1988) 47 Cal.3d 1, 33.)

In the present case, there can be no legitimate tactical reason for trial counsel's failure to object given the significance of the rights impacted by these errors. Any objection would have inured directly to appellant's benefit.

Under the holding in *Strickland,* reversal on ineffective assistance grounds is only warranted when "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (*Strickland v. Washington, supra,* 466 U.S. at p. 695.) Put more specifically, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington, supra,* 466 U.S. at p. 694.)

In the present case, as argued previously, the errors noted above were prejudicial and likely impacted the jury's determination of guilt. Therefore, since deficiency in counsel's performance here undermines confidence in the outcome of the trial, reversal is required. (*Strickland v. Washington, supra,* 466 U.S. at p. 695.)

## CONCLUSION

For the reasons set forth above, review should be granted by this court, or alternatively, the issues should be deemed exhausted for federal review pursuant 28 U.S.C. § 2254.

Respectfully submitted,

/s/

_____
KRISTEN OWEN
Attorney for Appellant

Dated: August 24, 2021

## CERTIFICATE OF WORD COUNT COMPUTATION

The text of this brief consists of 3,976 words, as counted by the Microsoft Word processing program used to prepare this brief.

Dated: August 24, 2021

/s/
_____
Kristen Owen
Attorney for Appellant

People v. Zaragoza,              No. G058966

## ATTORNEY'S CERTIFICATE OF ELECTRONIC SERVICE AND SERVICE BY MAIL
(Code Civ. Proc., § 1013a, subd. (2); Cal. Rules of Court, rules 8.71(f) and 8.77)

I, Kristen Owen, certify:

I am an active member of the State Bar of California and am not a party to this cause. My electronic service address is kowenlaw@gmail.com and my business address is P.O. Box 1608, Burlingame, California 94011-1608. On August 24, 2021, I served the persons and/or entities listed below by the method checked. For those marked "Served Electronically," I transmitted a PDF version of APPELLANT'S PETITION FOR REVIEW by TrueFiling electronic service and/or by e-mail to the e-mail service address(es) provided below. Transmission occurred by 5:00 p.m. For those marked "Served by Mail," I deposited in a mailbox regularly maintained by the United States Postal Service at Burlingame, California, a copy of the above document in a sealed envelope with postage fully prepaid, addressed as provided below.

| | |
|---|---|
| Supreme Court of California<br>350 McAllister Street<br>San Francisco, California 94102-4797 | Fourth District Court of Appeal,<br>Division Three<br>via TrueFiling |
| __X__ Served Electronically<br>_____ Served One Copy by Mail | __X__ Served Electronically<br>_____ Served by Mail |

24

Office of the Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
P.O. Box 85266
SDAG.Docketing@doj.ca.gov
Attorney for Respondent
State of California

  X   Served Electronically
_____ Served by Mail

Appellate Defenders, Inc.
555 West Beech Street, Ste. 300
San Diego, CA 92101
eservice-court@adi-sandiego.com

  X   Served Electronically
_____ Served by Mail

Gilberto Fuentes Zaragoza, BL7262
P.V.S.P. – A2-145
P.O. Box 8500
Coalinga, CA 93210

_____ Served Electronically
  X   Served by Mail

Orange County District Attorney
Appellate@da.ocgov.com

  X   Served Electronically
_____ Served by Mail

Honorable Michael A. Levensen
Orange County Superior Court
700 Civic Center Dr. West
Santa Ana, CA 92702

_____ Served Electronically
  X   Served by Mail

Larisa Dinsmoor, Dep. PD
Orange County PD
801 Civic Center Dr. West,
Suite 400
Santa Ana, CA 92701

_____ Served Electronically
  X   Served by Mail

I declare under penalty of perjury under the laws of the State of
California that the foregoing is true and correct.  Executed on
August 24, 2021, at Burlingame, California.

                    /s/_____

                    Kristen Owen
                    SBN 228029

## APPENDIX A

## OPINION OF THE COURT OF APPEAL
## FOURTH APPELLATE DISTRICT, DIVISION THREE

Court of Appeal, Fourth Appellate District, Division Three
Kevin J. Lane, Clerk/Executive Officer
Electronically FILED on 7/15/2021 by Alex Reynoso, Deputy Clerk

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>GILBERTO FUENTES ZARAGOZA,<br><br>    Defendant and Appellant. | G058966<br><br>(Super. Ct. No. 17CF0067)<br><br>O P I N I O N |

        Appeal from a judgment of the Superior Court of Orange County, Michael A. Leversen, Judge.  Affirmed.

        Kristen Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

        Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Holly D. Wilkens and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Gilberto Fuentes Zaragoza was convicted of multiple counts of child sex abuse for molesting his niece Laura P.  His sole contention on appeal is that the trial court erred in admitting evidence regarding the damaging effect his abuse had on Laura's physical and emotional well-being.  Appellant contends this evidence was so inflammatory it violated his right to a fair trial  We disagree and affirm the judgment.

FACTS

Following the death of her father when she was a toddler, Laura lived in a Tustin apartment with her brother, mother and aunt.  When Laura was about six years old, her aunt married appellant, and he moved into the apartment as well.  Since appellant was the only man in the household, Laura trusted him like a father.

However, when Laura was about nine years old, appellant started touching her inappropriately around the apartment, and that led to more serious transgressions.  One day, he went into Laura's bedroom and started kissing her.  She resisted and told him to stop, but he pushed her onto her bed and raped her.  Afterward, Laura felt sad and confused.  Appellant told her not to tell anyone what he had done, so she kept the incident to herself.

A few years later, when Laura was 12, appellant did the same thing to her in her bedroom.  During this episode, Laura bit appellant on the arm to get him to stop, but that did not deter him.

The next incident occurred two years later, when Laura was 14 years old.  On that occasion, Laura was half asleep when appellant crawled into her bed with her and penetrated her vagina with his penis.  In the course of doing so, he also kissed and groped Laura very roughly, leaving a hickey on her breast.

Later that same year, appellant again entered Laura's bedroom unannounced.  He forced her onto the bed, reached under her clothing and began penetrating her vagina with his fingers.  But then somebody walked by the room, and he ceased the attack for fear of being discovered.

2

The final episode occurred in 2016, when Laura was 15 years old.  Laura was in the kitchen making breakfast when appellant pulled her into the living room, forced her onto the floor and raped her.  The next day, he had Laura take a pregnancy test, and it came back negative.

In the wake of that incident, Laura disclosed appellant's abuse to the police, and they had her make a covert phone call to appellant for investigative purposes.  During the call, appellant admitted the last two incidents.  He also confessed to them when he was subsequently interviewed in-person by the police.

The investigation culminated in a five-count felony complaint against appellant.  The first two counts alleged aggravated sexual assault, in the form of rape, when Laura she was under the age of 14.  (Pen. Code, § 269, subd. (a)(1).)  Count three, which was predicated on the hickey episode, alleged appellant raped Laura when she was age 14 or older.  (*Id.* at § 261, subd. (a)(2).)  Count four alleged the same offense based on the living room rape in 2016.  (*Ibid.*)  And count five alleged sexual penetration based on the digital penetration that occurred in Laura's bedroom.  (*Id.* at § 289, subd. (a)(1)(C).)

At trial, Laura testified that when she was about 12 years old, she started inflicting physical harm on herself in response to appellant's sexual abuse.  Laura did not describe the harm in detail, but she did say she cut and burned her wrists and thighs.  She also said she thought about killing herself during this time.  However, the more she thought about it, the more she realized suicide was not the answer to her problems.  So, she told a friend what appellant had been doing to her, and that led to her subsequent disclosures to the police.

The prosecution's expert witness on child abuse testified it is not uncommon for molestation victims to engage in self-destructive behavior.  She said inflicting self-harm is a coping mechanism victims use to distract themselves from the psychological and emotional pain they are suffering as a result of being abused.

During closing argument, defense counsel conceded appellant was guilty on counts four and five, the crimes to which he confessed. However, counsel argued appellant was not guilty of the remaining three charges. The jury disagreed and convicted appellant across the board. The trial court sentenced him to 30 years to life in prison, plus a consecutive term of 26 years, for his crimes. The sentence is not challenged.

## DISCUSSION

Appellant contends the trial court abused its discretion and undermined his due process right to a fair trial by allowing the prosecution to admit the evidence regarding Laura's self-harm and suicidal thoughts. We cannot agree.

When the issue was litigated before trial, defense counsel objected to the evidence on the basis it was highly inflammatory and possessed little evidentiary value. The court said it was inclined to admit the evidence so long as there was expert testimony saying that self-harm is a common symptom of child sex abuse. However, if defense counsel wanted to renew her objection when the evidence was being introduced at trial, the court would entertain any arguments she had at that time.

As it turned out, defense counsel did not object to Laura's testimony about her self-harm or suicidal thoughts, nor did she object to the expert's testimony that those are common signs of child sexual abuse. And when the prosecutor brought up the issue in closing argument, defense counsel was likewise silent.[1] At no point following the

---

[1] The prosecutor mentioned the issue twice during her closing argument. The first time, she simply pointed out that Laura's suicidal thoughts and psychological pain were part of what motivated her to report appellant's conduct. The second time, she discussed the issue in greater depth, saying "the degree of physical harm that [Laura's] causing herself is a direct result . . . of [the] harm that [appellant] caused her. [¶] This is what she was forced to do to keep her life intact. This is how she was putting up with all of the hurt and all of the pain that he caused her, not only having to live with the memories of being raped repeatedly . . . but now inflicting physical [harm] – by cutting [her]self and burning [her]self to cope. [¶] Luckily, Laura did what she could so she didn't have to end her life. And she was here in court today to testify and tell you her story. And that's what this case is about. This case is about Laura, what [appellant] did to her, what he stole from her. And now it's time for you to hold him accountable and bring Laura justice."

pretrial hearing did appellant's attorney challenge the evidence or argument regarding Laura's self-harm or suicidal thoughts.

As respondent rightly notes, that means appellant forfeited his right to challenge that evidence on appeal. The law is well established that a party cannot complain on appeal about evidence to which he did not object at trial. (Evid. Code, § 353; *People v. Cage* (2015) 62 Cal.4th 256, 287.) Even though appellant objected to the subject evidence before trial, his failure to renew his objection at trial – despite the trial court's invitation to do so – constitutes a forfeiture under the law. (*People v. Holloway* (2004) 33 Cal.4th 96, 133; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1174; *People v. Karis* (1988) 46 Cal.3d 612, 634, fn. 16; *People v. Jennings* (1988) 46 Cal.3d 963, 975, fn. 3.)

Anticipating this result, appellant contends his attorney was ineffective for failing to preserve the issue for appeal. (See *Strickland v. Washington* (1984) 466 U.S. 668 [the Sixth Amendment guarantees criminal defendants the right to competent representation at trial].) However, because "[a]n attorney may choose not to object for many reasons, . . . the failure to object rarely establishes ineffectiveness of counsel." (*People v. Kelly* (1992) 1 Cal.4th 495, 540.) "If, as here, the record fails to show why counsel failed to object, the claim of ineffective assistance must be rejected on appeal unless counsel was asked for an explanation and failed to provide one or there can be no satisfactory explanation." (*People v. Mitchell* (2008) 164 Cal.App.4th 442, 467; *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

Defense counsel was never asked to explain why she did not object to the evidence of Laura's self-harm and suicidal thoughts at trial, but that failure can be explained on many levels. For starters, the evidence was relevant to Laura's credibility and the truth of the charged offenses, given the expert's testimony that self-destructive behavior is a common symptom of sexual abuse. Even though appellant admitted two of the charges, the jury still had to decide whether he was guilty of the remaining charges.

The fact Laura started harming herself when she was 12 years old – years before the uncontested charges arose – provided strong evidence that he was.

Furthermore, the evidence of what Laura did to herself was not particularly shocking in light of what appellant did to her. Indeed, very few jurors would be surprised to hear that a young girl experiencing sexual abuse from her uncle was inflicting physical harm on herself and harboring suicidal thoughts. Those ramifications are not pleasant to think about, of course, but they pale in comparison to what appellant put Laura through.

Appellant analogizes the evidence of Laura's self-harm and suicidal thoughts to victim autopsy photos, which are subject to exclusion under Evidence Code section 352 if they are particularly grotesque and of little evidentiary value. (See, e.g., *People v. Marsh* (1985) 175 Cal.App.3d 987, 999 [trial court erred in admitting especially graphic autopsy photos of the young victim's body].) But Laura did not describe her self-harm in detail, nor was the jury presented with any photographic evidence of her self-inflicted wounds. Because Laura's brief testimony on the topic was both probative of the charges and unlikely to invoke a unique emotional bias against appellant, defense counsel was not remiss for failing to challenge it at trial. (See generally *People v. Price* (1991) 1 Cal.4th 324, 387 [the failure to make futile objections does not constitute ineffective assistance of counsel].)

Assuming otherwise, the nature of the subject evidence was not so inflammatory as to infringe appellant's fair trial rights or affect the outcome of the trial. While the evidence certainly did not make appellant look good, he was already tarnished by virtue of his confession to having sexually molested Laura on two different occasions. Knowing this going in, defense counsel did not attempt to paint appellant as an upstanding citizen. In fact, in her opening statement to the jury, defense counsel readily admitted appellant was a "bad man" who had harmed Laura in ways that were "unimaginable," a reasonable tack for an advocate who is going to have to admit two serious sexual assaults by her client. Against this backdrop, the evidence of Laura's self-

harm and suicidal thoughts was not a game changer.  Because the evidence does not undermine our confidence in the jury's verdict, we must affirm.  (See *People v. Johnson* (2016) 62 Cal.4th 600, 653 [in addition to proving deficient performance, a defendant alleging ineffective assistance of counsel must also demonstrate he suffered prejudice to a reasonable probability, meaning a probability sufficient to undermine confidence in the outcome of the case].)

DISPOSITION

The judgment is affirmed.

BEDSWORTH, J.

WE CONCUR:

O'LEARY, P. J.

GOETHALS, J.

G050966

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

DEPARTMENT C54

COURT OF APPEAL - 4TH DIST DIV 3
FILED

MAY 2 9 2020

DEPUTY CLERK

THE PEOPLE OF THE STATE )
OF CALIFORNIA,          )
                        )
        PLAINTIFF,      )
                        )
    VS.                 ) CASE: 17CF0067
                        )
GILBERTO ZARAGOZA,      )
                        )
        DEFENDANT.      )
_____)

HONORABLE CYNTHIA M HERRERA, JUDGE PRESIDING

REPORTER'S TRANSCRIPT OF HEARING

SEALED PROCEEDINGS - PAGES 16 THROUGH 25

FRIDAY, APRIL 12, 2019

APPEARANCES OF COUNSEL:

FOR THE PEOPLE:        TODD SPITZER
                       DISTRICT ATTORNEY
                       BY:  MENA GUIRGUIS, ESQ.


FOR THE DEFENDANT:     ORANGE COUNTY PUBLIC DEFENDER
                       BY:  LARISA DINSMOOR, ESQ.

G058966





                    GLENN MILLER, CSR 12265
                    OFFICIAL COURT REPORTER

1    SANTA ANA, CALIFORNIA - FRIDAY, APRIL 12, 2019

2    (THE FOLLOWING PAGES, 16 THROUGH 25, ARE SEALED:)

3                        -ØØØ-

4    THE COURT:  ALL RIGHT.  THANK YOU.

5         ALL RIGHT.  WE ARE BACK IN CHAMBERS.

6    MS. DINSMOOR IS PRESENT, AS WELL AS THE CLERK.  THE PEOPLE

7    ARE NOT PRESENT AND THE DOOR IS CLOSED.

8         SO FOR THE PURPOSE OF THIS HEARING,

9    MS. DINSMOOR, I DO HAVE YOUR TWO-PAGE SEALED DECLARATION.

10   AND IN THE TWO-PAGE SEALED DECLARATION THERE ARE A NUMBER OF

11   BULLET POINTS WHERE YOU ARE REQUESTING CERTAIN ITEMS, AND I

12   DO HAVE SOME QUESTIONS AS TO SOME OF THE ITEMS.  AND WHAT I

13   WOULD LIKE TO DO IS -- MAYBE WE'LL JUST START -- FOR RECORD

14   PURPOSES, WE'LL JUST START FROM -- I'LL SAY THE LINE NUMBER

15   AND THE PAGE NUMBER, SINCE THIS WILL BE PART OF THE COURT

16   FILE.

17        WHAT THE COURT JUST HAS SOME FURTHER

18   QUESTIONS ABOUT IS THE MATERIALITY OF SOME OF THE

19   INFORMATION.  I REALIZE THAT YOU MAY NOT KNOW WHAT IS IN

20   THESE RECORDS, BUT YOU MAY -- THERE MAY BE A SPECIFIC

21   REASON.  AND SO THE COURT JUST WANTS TO MAKE SURE THAT I

22   UNDERSTAND YOUR ARGUMENTS ABOUT THE MATERIALITY OF SOME OF

23   THE REQUESTS YOU ARE MAKING, WHETHER OR NOT THEY EVEN EXIST.

24   BUT I WANT TO GET OVER THAT ISSUE FIRST, THAT I HAVE ALL OF

25   THE INFORMATION BEFORE I DO RULE.

26        SO REGARDING -- YOU HAVE SPECIFIED A TIME

1   FRAME, MARCH 17, 2011, TO JULY 1, 2016, FOR ALL OF YOUR

2   REQUESTS.

3              RECORDS OF ATTENDANCE, IF I CAN ASK IF THERE

4   IS ANYTHING ADDITIONAL THAT YOU CAN SHARE WITH THE COURT

5   REGARDING MATERIALITY OF RECORDS OF ATTENDANCE.

6          MS. DINSMOOR:  IF THE ATTENDANCE SHOWS THAT THE

7   VICTIM IN THIS CASE WAS ACTUALLY AT SCHOOL AND NOT AT HOME

8   DURING WHEN THE MOLESTS HAPPENED, THE ALLEGED MOLESTS

9   HAPPENED, THAT WOULD BE EXCULPATORY OR POTENTIALLY BE

10  EXCULPATORY.

11         THE COURT:  OKAY.  ALL RIGHT.  AND THAT WAS JUST SO

12  WE -- I WILL FOLLOW ALONG WITH THE SEALED DECLARATION.  SO

13  WE ARE ON PAGE 1, THAT'S AT LINE 21.

14             SO NOW LINE 23, RECORDS OF DISCIPLINE,

15  INCLUDING, BUT NOT LIMITED TO, SUBSTANCE ABUSE BETWEEN THOSE

16  SAME DATES.  IF YOU CAN, AT LEAST REGARDING THAT ISSUE,

17  EXPLAIN TO THE COURT THE MATERIALITY OF THAT REQUEST.

18         MS. DINSMOOR:  YES.  IT WOULD GO TO STATE OF MIND

19  AND POTENTIALLY CREDIBILITY.  IF SHE WAS UNDER THE INFLUENCE

20  OF CERTAIN DRUGS OR ALCOHOL OR HANGING OUT WITH A CERTAIN

21  GROUP OF PEOPLE, THAT THAT MIGHT LEAD TO HER STATE OF MIND

22  DURING ANY ALLEGED ACTS, HER PERCEPTION AT THE TIME, PERHAPS

23  ALTER HER ABILITY TO DETERMINE WHAT HAPPENED, WHAT DIDN'T

24  HAPPEN.  AND IT GOES TO A CREDIBILITY ISSUE WITH REGARD TO

25  HER BEING COMPROMISED, HER PERCEPTION OF BEING COMPROMISED.

26         THE COURT:  OKAY.  THE THIRD BULLET POINT, WHICH IS

1  AT LINE 25 ON PAGE 1, COUNSELING RECEIVED AT SCHOOL OR
2  OFF-SITE WITH REGARD TO ANY MENTAL HEALTH OR BEHAVIORAL
3  ISSUES BETWEEN THOSE DATES.  IF YOU COULD ADDRESS THAT AS
4  WELL.
5          MS. DINSMOOR:  YES.  SO THE VICTIM MADE SEVERAL
6  STATEMENTS ABOUT THE INCIDENTS IN THE POLICE REPORT TO
7  VARIOUS POLICE OFFICERS AND SOCIAL SERVICES.  I WOULD LIKE
8  TO KNOW IF THERE WERE ANY OTHER STATEMENTS THAT SHE MADE
9  TO -- VIA THE SCHOOL TO THERAPISTS THAT I DO NOT HAVE.
10  THOSE STATEMENTS ABOUT THIS INCIDENT WOULD -- AS AN
11  ATTORNEY, I WOULD COMPARE IT TO THE STATEMENTS SHE MADE TO
12  THE POLICE AND TO THE SOCIAL WORKERS, AND WHICH COULD RESULT
13  IN POTENTIALLY INCONSISTENT STATEMENTS, WHICH WOULD THEN GO
14  DIRECTLY TO HER CREDIBILITY.
15          THE COURT:  ALL RIGHT.  AND THEN ON THE FOURTH
16  BULLET POINT, WHICH IS AT LINE 27 ON PAGE 1, ANY RECORDS
17  REGARDING THESE ALLEGATIONS, WHICH -- ASSUMING THE CHARGES,
18  INCLUDING, BUT NOT LIMITED TO, ANY STATEMENTS MADE BY
19  MS. PRADO, NOTES BY SCHOOL CRISIS COUNSELORS, MEDICAL
20  ATTENTION RECEIVED OR SOUGHT, AND STATEMENTS MADE TO THE
21  POLICE.
22              AND I AM ASSUMING THAT'S SIMILAR TO WHAT YOU
23  JUST DESCRIBED.
24          MS. DINSMOOR:  YES.
25          THE COURT:  THE QUESTION I HAD ABOUT MEDICAL, IT'S
26  FAIRLY BROAD, THE WAY YOU ARE REQUESTING MEDICAL ATTENTION.

*** SEALED PROCEEDINGS ***

1   "ANY AND ALL MEDICAL ATTENTION."  AND IF IT IS, THEN I NEED

2   TO KNOW MORE, AS FAR AS THE MATERIALITY OF THAT.

3              MS. DINSMOOR:  SO AS FAR AS THE MATERIALITY, ONE,

4   IN MENTAL HEALTH, I THINK WOULD GO DIRECTLY TO HER ABILITY

5   TO PERCEIVE FACTS.  AND SO THAT WOULD BE THE MENTAL HEALTH

6   PART.

7              AS TO PHYSICAL, DURING THIS TIME, IF SHE --

8   THE ALLEGATIONS ARE ESSENTIALLY THAT SHE WAS RAPED

9   REPEATEDLY BY TWO UNCLES.  MY CLIENT IS ONE OF THOSE UNCLES.

10             THE COURT:  OKAY.

11             MS. DINSMOOR:  SO I WOULD BE LOOKING FOR ANY

12  MEDICAL COMPLAINTS IN THE VAGINAL AREAS, IN THE ANUS AREAS,

13  ANY AREAS THAT YOU WOULD -- THAT WOULD BE REFLECTIVE OF THE

14  TYPE OF SEXUAL ABUSE THAT THE ALLEGATIONS INVOLVE.

15             THE COURT:  WOULD THAT ALSO INCLUDE, AND BASED ON

16  THE FACTS, ANY PHYSICAL INJURY TO HER?  I UNDERSTAND YOU ARE

17  SAYING MORE OF THE SEXUAL NATURE, WHICH I UNDERSTAND WHAT

18  YOU ARE STATING.  BUT ANY OTHER TYPE OF PHYSICAL INJURIES

19  THAT YOU ARE LOOKING FOR?

20             MS. DINSMOOR:  IT WOULD.  AND FROM A DIFFERENT

21  ANGLE, AS FAR AS PHYSICAL INJURIES, GOING TO WHETHER OR NOT

22  SHE WAS RESTRAINED, STATEMENTS LIKE THAT, THAT MIGHT HAVE

23  BEEN MADE TO A MEDICAL PRACTITIONER THAT ARE INCONSISTENT

24  WITH HER OTHER STATEMENTS.

25             IN ADDITION, IT IS KIND OF MY THEORY, BECAUSE

26  SHE WAS MOLESTED BY -- THE ALLEGATIONS ARE THAT SHE WAS

1  MOLESTED BY TWO UNCLES, IT IS POSSIBLE ONE OF MY POSSIBLE

2  DEFENSES COULD BE THAT MOST OF -- IT WAS BASICALLY THE

3  BROTHER WHO DID THINGS.  SO WHAT -- WHAT SHE SAID -- WHAT

4  SHE SAID TO ANY MEDICAL PROFESSIONALS ABOUT BOTH UNCLES I

5  THINK WOULD BE RELEVANT IN THE SENSE THAT SHE MIGHT BE

6  CONFUSED -- ONE MIGHT HAVE MOLESTED HER, AND THEN SHE BLAMED

7  THE OTHER.  THERE COULD BE A MOTIVE THERE TO -- OR SOME KIND

8  OF BIAS AGAINST ALL UNCLES OR ALL MEN WHO WERE -- ADULT MEN

9  WHO WERE LIVING IN THE HOUSE AT THE TIME.

10            IN ADDITION, WITH REGARD TO THE MEDICAL

11  ASPECTS, IF SHE WAS BEING PHYSICALLY ABUSED BY ONE OF THE

12  UNCLES, JUST PHYSICALLY, SHE COULD HAVE A MOTIVE TO SAY IT

13  WAS MORE THAN JUST PHYSICAL, THAT IT WAS SEXUAL, TO GET BACK

14  AT THEM, POTENTIALLY.  SO IF SHE IS SAYING -- AT ONE POINT

15  SHE IS TALKING ABOUT PHYSICAL ABUSE, AND THEN IT -- OVER

16  TIME, IT MATRICULATES INTO SEXUAL ABUSE.  AND DEPENDING ON

17  THE TIMING OF THE REST, IT COULD INVOLVE A MOTIVE FOR HER TO

18  LIE OR AT LEAST EXAGGERATE, WHICH WOULD GO TO HER

19  CREDIBILITY AS A --

20            THE COURT:  OKAY.  AS A WITNESS.

21            MS. DINSMOOR:  -- AS A WITNESS.

22            THE COURT:  SHE'S AN EXPECTED WITNESS.

23            MS. DINSMOOR:  ABSOLUTELY.

24            THE COURT:  OKAY.  SO THEN RETURNING TO THE SECOND

25  PAGE, THIS WILL BE AT BULLET POINT -- OR LINE 3, IT SAYS,

26  "COMPLAINTS BY OR AGAINST LAURA PRADO THAT RELATE TO HER

1  VERACITY AND HER MOTIVE TO FABRICATE OR EMBELLISH FACTS

2  BETWEEN THOSE TWO DATES." I DON'T HAVE ANYTHING FURTHER. I

3  THINK THAT IS SELF-EXPLANATORY ON THAT REQUEST. THE COURT

4  DOES NOT NEED ANY ADDITIONAL INFORMATION.

5        ANY RECORDS OR STATEMENTS MADE BY MS. PRADO

6  RELATED TO HER HOME LIFE, INCLUDING, BUT NOT LIMITED TO, HER

7  MOTHER, THE UNCLES, GILBERTO MARGARITA ZARAGOZA, THE

8  CODEFENDANTS IN THIS CASE, BETWEEN THOSE DATES.

9        ANYTHING ADDITIONAL? I KNOW YOU JUST TOUCHED

10  ON, IN YOUR LAST ARGUMENT OR PROFFER TO THE COURT, ABOUT THE

11  TWO UNCLES. IS THERE ANYTHING ADDITIONAL THAT YOU WOULD

12  LIKE TO ADD TO THAT REQUEST?

13     MS. DINSMOOR: YES. AS FAR AS KIND OF A MOTIVE TO

14  LIE, IT -- DEPENDING ON HER RELATIONSHIP OR WHAT SHE IS

15  ARTICULATING HER RELATIONSHIP IS WITH HER MOTHER AND/OR HER

16  MOTHER -- THE RELATIONSHIPS HER MOTHER HAS WITH HER BROTHERS

17  COULD BE RELEVANT TO A MOTIVE TO FABRICATE ALLEGATIONS.

18     THE COURT: OKAY. AND THAT WAS AT BULLET POINT

19  NO. 6.

20       SO NOW BULLET POINT NO. 9, AND I AM USING THE

21  PLEADING PAPERS NUMBERS, "RECORD" -- "RECORDS RELATED TO

22  SPECIAL EDUCATION PLAN, IF IT DOES EXIST, BETWEEN MARCH 17TH

23  AND JULY 1ST."

24      LET ME HAVE YOUR ARGUMENT AS TO MATERIALITY

25  OR IF YOU -- IT SEEMS TO BE A VERY BROAD REQUEST. I AM NOT

26  CERTAIN EXACTLY WHAT YOU ARE MEANING BY "SPECIAL EDUCATION"

1  THAT YOU ARE LOOKING FOR.

2          MS. DINSMOOR:  SO I -- I AM LOOKING FOR IF SHE WAS

3  TESTED FOR IQ, ESSENTIALLY --

4          THE COURT:  OKAY.

5          MS. DINSMOOR:  -- AND HER ABILITY TO -- IF SHE HAS

6  A SPECIAL EDUCATION PLAN, IT IS MORE LIKELY THAT SHE HAS

7  SOME LEARNING DISABILITIES OR LEARNING CHALLENGES.  AND THAT

8  MIGHT BE RELEVANT, AGAIN, AS TO HER ABILITY TO PERCEIVE, TO

9  PROCESS INFORMATION, TO ARTICULATE INFORMATION, WHICH COULD

10 BE RELEVANT AT TRIAL IN CROSS-EXAMINATION.

11         THE COURT:  OKAY.  AND THEN MOVING TO THE BULLET

12 POINT THAT IS AT NO. 11 ON THE PLEADING PAPER, ANY RECORDS

13 RELATED TO NEGLECT, ABUSE, OR DOMESTIC VIOLENCE BETWEEN THE

14 TWO DATES.

15             AGAIN, IF -- WHAT ONE, IN A MORE NARROW -- IF

16 YOU COULD TELL THE COURT WHAT YOU ARE LOOKING FOR, BECAUSE

17 THE COURT DOES SEE THAT COULD INCLUDE MANY THINGS, AND THEN

18 THE MATERIALITY OF THAT INFORMATION.

19         MS. DINSMOOR:  SO IF THERE WERE ANY NEGLECT OR

20 ABUSE REPORTS OF THE MOTHER -- I'LL START WITH THE MOTHER --

21 THEN THAT COULD LEAD TO SOME KIND OF REASONING OR MOTIVE FOR

22 THE VICTIM TO LIE IN THIS CASE, IF IT IS RELATED TO HER

23 GIVING MORE ATTENTION TO ANOTHER FAMILY MEMBER OR HAVING TO

24 TAKE CARE OF ONE OF THE UNCLES.  I DON'T KNOW HOW THAT WOULD

25 PLAY OUT.  BUT IN GENERAL, IF -- IT SHOWS -- IF THERE IS

26 PROBLEMS IN THE HOME IN GENERAL, IT CREATES A DIFFERENT

1   ATMOSPHERE, THAT ONE COULD ARGUE AT TRIAL, GIVES DIFFERENT

2   MOTIVATIONS FOR THE VICTIM IN THIS CASE.

3          THE COURT:  OKAY.

4              THEN THE NEXT BULLET POINT, WHICH IS AT

5   LINE 13 ON PAGE 2 OF THE PLEADING PAPER, ANY RECORDS OR

6   STATEMENTS RELATED TO ANY CUSTODY ISSUES, DISPUTES OVER

7   MS. PRADO, BETWEEN THOSE SAME DATES.

8              ANYTHING ADDITIONAL YOU WANT TO ADD?

9          MS. DINSMOOR:  NO, NOT TO THAT.

10         THE COURT:  OKAY.  AND THEN, FINALLY, YOUR LAST

11  REQUEST IS, ANY INCONSISTENT STATEMENTS MADE BY MS. PRADO

12  WITHIN THE SCHOOL RECORDS BETWEEN THOSE DATES.

13             INCONSISTENT STATEMENTS AS TO THIS CASE OR

14  JUST IN GENERAL?  IF YOU CAN FIRST NARROW -- OR AT LEAST

15  EXPLAIN TO THE COURT WHAT THE MATERIALITY WOULD BE OF "ALL

16  INCONSISTENT STATEMENTS," IF THAT IS WHAT YOU ARE ASKING

17  FOR.

18         MS. DINSMOOR:  WELL, SO ANY INCONSISTENT STATEMENTS

19  ARE -- COULD BE PROBATIVE OF SOMEONE NOT TELLING THE TRUTH.

20             OBVIOUSLY, I DON'T KNOW WHAT'S IN THE

21  RECORDS, BUT IF SHE IS -- I WOULD PROFFER THAT ANY

22  INCONSISTENT STATEMENTS WITHIN THE RECORDS WOULD BE

23  RELEVANT, BECAUSE IT IS SHOWING A POTENTIAL PATTERN TO LIE,

24  AN ABILITY TO LIE OR AN ABILITY TO MISPERCEIVE FACTS,

25  POTENTIAL MOTIVATIONS AT DIFFERENT TIMES, DEPENDING ON THE

26  SUBJECT MATTER.  SO I WOULD BE REQUESTING ALL INCONSISTENT

STATEMENTS.  AGAIN, I DON'T KNOW WHAT IS IN THERE.  BUT IF

SHE, YOU KNOW, SAYS ONE THING TO A THERAPIST AND SAYS

ANOTHER THING THAT IS IN DIRECT CONTRAST TO A TEACHER, I

THINK THAT IS RELEVANT AND PROBATIVE FOR HER CREDIBILITY.

THE COURT:  ALL RIGHT.  AND THE DATE RANGE THAT YOU

ARE REQUESTING, AS FAR AS THE IMPORTANCE OF THOSE DATES THAT

YOU ARE LOOKING FOR, IS THAT REGARDING -- OR IS THAT HOW

THEY ARE CHARGED?  AND MEANING, IT'S ON OR ABOUT BETWEEN

THOSE TWO DATES?

MS. DINSMOOR:  YES.

THE COURT:  IS THAT HOW YOU NARROWED IT?

MS. DINSMOOR:  YES.

THE COURT:  OKAY.

MS. DINSMOOR:  IT IS DIRECTLY RELATED TO THE

INFORMATION -- THE CHARGING DOCUMENTS IN THIS CASE, AS TO

THE ALLEGATIONS.

THE COURT:  OKAY.  ALL RIGHT.  IS THERE ANYTHING

ADDITIONAL THAT YOU WOULD LIKE TO ADD FOR YOUR RECORD AND

ALSO JUST TO -- FOR THE COURT REGARDING EITHER MATERIALITY

OF WHAT YOU ARE REQUESTING OR ANY ADDITIONAL REQUESTS?

MS. DINSMOOR:  I WOULD JUST SAY THAT I AM NOT SURE

WHAT IS IN THOSE DOCUMENTS, BUT THAT THE COURT SHOULD LOOK

AT IT BROADLY, BECAUSE CREDIBILITY IS A BROAD CATEGORY.

AND THIS IS THE PRIMARY WITNESS IN THIS CASE.

SHE IS GOING TO -- SHE IS THE -- SHE IS THE PRIMARY WITNESS.

AND I KNOW THE PROSECUTOR MENTIONED THAT THERE WERE

*** SEALED PROCEEDINGS ***

1  STATEMENTS MADE BY MY CLIENT, BUT THERE'S MIRANDA ISSUES AS

2  WELL.  SO I THINK THE PURVIEW BY WHAT -- WHERE THE COURT

3  WOULD BE -- JUST TO ESSENTIALLY FOCUS ON WHAT COULD

4  POTENTIALLY BE MATERIAL FOR CROSS-EXAMINATION IN THIS CASE.

5          THE COURT:  ALL RIGHT.  THE COURT DOES NOT HAVE ANY

6  FURTHER QUESTIONS.  WE WILL END THIS HEARING.  I AM GOING TO

7  ORDER THAT THE -- THIS HEARING BE SEALED AND NOT TO BE

8  TRANSCRIBED, UNLESS THERE IS A FURTHER COURT ORDER

9  REQUESTING THAT OR ORDERING THAT IT BE TRANSCRIBED.  SO I

10 SHOULD SAY THE NOTES OF OUR HEARING HERE SHOULD BE SEALED.

11 AND THEN WE'LL BE FINISHED AND GO BACK OUT.

12          (END OF SEALED PROCEEDINGS.)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7               EASTERN DISTRICT OF CALIFORNIA

8

9            Plaintiff,

10   vs.                                No.

11

12        Defendant(s).              **PROOF OF SERVICE**

13   _GILBERTO ZARAGOZA IF_

14        I, the undersigned, hereby certify that I am over the age of eighteen years and

15   on _12 - 8_____, 20_21___, I served a copy of

16   _Petition Under U.S.C §2954 for writ of Habeas Corpus)_

17   by placing a copy in a postage paid envelope addressed to the person hereinafter listed

18   by depositing said envelope in the United States Mail:

19

20

21

22   I declare under penalty of perjury that the foregoing is true and correct.

23

24                            _Gilberto Zaragoza_

25                                (Signed)

26

                                        Attachment 7